**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**AHMED K. ALLOUSH,**

**Plaintiff,**

**v.** **1:05-CV-1173 (FJS/DRH)**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**

**Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **KURZ & ASSOCIATES, LLC**<br>2212 Western Avenue<br>P.O. Box 1502<br>Guilderland, New York 12084<br>Attorneys for Plaintiff | **MICHAEL KURZ, ESQ.** |
| **MURA & STORM, PLLC**<br>930 Rand Building<br>14 Lafayette Square<br>Buffalo, New York 14203<br>Attorneys for Defendant | **SCOTT D. STORM, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action in New York State Supreme Court in the County of Albany on August 19, 2005, and served Defendant on August 22, 2005. Defendant filed an answer to the complaint on September 19, 2005, and, on the same day, filed a petition to remove the action to this Court based upon the parties' diversity of citizenship.

In his complaint, Plaintiff asserts three causes of action. In his first cause of action, he

seeks an "order and judgment . . . establishing, determining and adjudging the rights of the parties under the Policy and, furthermore, declaring that [Defendant] is obligated to pay the Plaintiff the sum of $55,024.02 as and for depreciation . . . ." *See* Complaint at ¶ 27. In his second cause of action, Plaintiff alleges that Defendant has breached the insurance contract by refusing to pay him the sum of $55,024.02 "unless Plaintiff resides on the replacement premises as his permanent residence and domicile." *See id.* at ¶¶ 29-30. Finally, in his third cause of action, Plaintiff claims that he has been damaged in the amount of $20,570.00 "as a result of the false and fraudulent representations of . . . [Defendant] . . . ." *See id.* at ¶ 33.[1]

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure or for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of its motion, Defendant contends, among other things, that Plaintiff has no claim against Defendant for replacement costs because he has not replaced the insured premises.

## II. BACKGROUND

In March 2003, Plaintiff and Defendant entered into an insurance contract ("the Policy") covering the period from March 19, 2003, through March 19, 2004, for the property located at 3666 Carmen Road, Guilderland, New York ("the insured premises"). *See* Answer at ¶ 5. On August 24, 2003, a fire caused damage and substantial destruction to the insured premises. *See id.* at ¶ 6; Complaint at ¶ 4; Defendant's Statement of Material Facts at ¶ 4.

[1] Plaintiff no longer asserts his third cause of action and has abandoned his claim for Code Upgrades.

Defendant estimated the damage to the insured premises under the "Coverage A – Dwelling" section of the Policy to be $196,849.26 on a replacement cost value ("RCV") basis and $141,825.24 on an actual cash value ("ACV") (depreciated value) basis, leaving the potentially recoverable depreciation (commonly referred to as "holdback") to be $55,024.02. *See* Defendant's Statement of Material Facts at ¶ 6. Plaintiff submitted a "Sworn Statement in Proof of Loss" and a "Statement as to the Full Cost to Repair or Replacement Under the Replacement Cost Coverage Subject to the Terms of the Policy" to Defendant making a claim for this amount. *See id.* When an insured makes a claim under the Policy on an ACV basis, he may later make a claim for any added loss based on the cost to repair or replace (the holdback) within 180 days after the loss. *See* Defendant's Statement of Material Facts at Exhibit "A" at E2. The Policy also contains a two-year contractual suit limitation condition that precludes a policyholder from commencing litigation against Defendant unless (1) there has been full compliance with the Policy's provisions and (2) the action has been commenced within two years of the date of the loss. *See id.* at E3.

Defendant paid Plaintiff the actual cash value of the damages to the insured premises on or around February 19, 2004. *See* Defendant's Statement of Material Facts at ¶ 14. Thereafter, Plaintiff completed repairs on the insured premises. However, he did not make a claim for the holdback on that basis because he could not substantiate expenditures in repairing the insured premises in excess of the actual cash value that Defendant paid to him. *See id.* at ¶ 16. Instead, even though Plaintiff decided to repair the insured premises and continued to reside there, he wanted to recover the holdback by purchasing another property. *See id.*

Around July 2005, Plaintiff contacted Defendant and informed Defendant that he

intended to buy a single-family house at 63 Marvin Avenue, Somerset, New Jersey, as a replacement for the insured premises.[2] *See id.* at ¶ 20. Defendant informed Plaintiff and his public adjuster about the Policy's two-year contractual suit limitation condition and the need for Plaintiff to replace the insured premises before that time period expired.[3] *See id.* at ¶ 23. Furthermore, it is clear from an e-mail that Plaintiff's public adjuster wrote on July 1, 2005, to Defendant, in which he stated that "[t]he deadline to file this holdback is August 24th," that he understood what the Policy required in this regard. *See id.*

At the time that he filed this action, Plaintiff had not replaced the insured premises.

## III. DISCUSSION[4]

### A. Plaintiff's breach-of-contract claim

In his second cause of action, Plaintiff claims that he "has duly demanded that [Defendant] pay the sum of $55,024.02 as and for depreciation . . . upon replacement of the insured premises with another premises . . . [;] [t]hat [Defendant] has refused to make said payment unless Plaintiff resides on the replacement premises as his permanent residence and domicile . . . [; and] [t]hat, by reason of said breach of contract by . . . [Defendant], Plaintiff has

---

[2] Plaintiff's former wife owned the house at 63 Marvin Avenue and lived there with four of their eight children.

[3] Plaintiff and his public adjuster were also statutorily on notice of this condition because it is included in the standard 165-line policy set forth in New York State Insurance Law § 3404(e).

[4] Since both parties relied upon documents outside the pleadings to support their respective positions, the Court will treat Defendant's motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

been damaged in the sum of [$55,024.02]." *See* Complaint at ¶¶ 29-31.

The problem with this claim is that Plaintiff has not purchased a replacement property; and, until he does so, Defendant is not obligated to pay him the holdback amount of $55,024.02. In this regard, the Policy clearly states that, up to the limit of liability, Defendant will pay the following:

> b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on like construction and use on the same premises except:
>
> (1) we will pay no more than the **actual cash value** of the damage <u>until the repair or replacement is made</u> when the cost to repair or replace the same is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.
>
> (2) when **you** claim loss or damage to buildings on an **actual cash value** basis. You may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.
>
> (3) if **you** choose not to repair or replace, **we** will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

*See* Defendant's Statement of Material Facts at Exhibit "A" at E2 (underlining added).

There is no dispute that Defendant paid Plaintiff the actual cash value of the damaged building. Thus, the only bone of contention between the parties is whether Defendant is obligated to pay Plaintiff the $55,024.02 holdback amount. Moreover, although Plaintiff blames Defendant's misrepresentations about the Policy's requirements for a replacement property – that the replacement property serve as his primary residence and that he sell the insured property – for his failure to comply with the Policy's conditions, Plaintiff acknowledges that he has not replaced the insured premises.

"[I]t is settled law in New York that, '[r]eplacement cost coverage inherently requires a replacement (a substitute structure for the insured) and costs (expenses incurred by the insured in obtaining the replacement); without them, the replacement cost provision becomes a mere wager.'" *Woodworth v. Erie Ins. Co.*, No. 05-CV-6344, 2006 WL 140798, *5 (W.D.N.Y. Jan. 17, 2006) (quotation and other citation omitted); *accord Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222, 223 (4th Dep't 1996) (holding that "the replacement cost provisions of a homeowner's insurance policy require an insured to rebuild his home before he can recover on a claim for that cost"). Since the Policy unambiguously states that Defendant is not required to pay Plaintiff any more than the actual cash value of the insured premises "until the repair or replacement is made," *see* Defendant's Statement of Material Facts at Exhibit "A" at E2, and Plaintiff has not replaced the insured premises, the Court finds that Defendant has not breached its obligations under the Policy. Therefore, the Court grants Defendant's motion for summary judgment dismissing Plaintiff's second cause of action.

**B. Plaintiff's claim for a declaratory judgment**

In his first cause of action, which is very similar to his breach-of-contract claim, Plaintiff again states that he "has duly demanded that [Defendant] pay the sum of $55,024.02 as and for depreciation . . . upon replacement of the insured premises with another premises [and] [t]hat [Defendant] has refused to make said payment unless Plaintiff resides on the replacement premises as his permanent residence and domicile." *See* Complaint at ¶¶ 25-26. Therefore, "Plaintiff seeks and [sic] order and judgment of this Court establishing, determining and adjudging the rights of the parties under the Policy and, furthermore, declaring that [Defendant]

is obligated to pay to Plaintiff the sum of $55,024.02 as and for depreciation . . . ." *See id.* at ¶ 27.

Pursuant to the Declaratory Judgment Act,

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

"A district court may not exert jurisdiction under the Declaratory Judgment Act if the action does not present an actual case or controversy." *Faxon v. Merck & Co., Inc.*, No. 3:07cv1776, 2007 WL 4554190, *1 (D. Conn. Dec. 21, 2007). "An actual case or controversy is 'one that is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."'" *Id.* (quotation omitted). The "'party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction.'" *Id.* at 2 (quotation omitted).

Alternatively, even if the district court has jurisdiction over a declaratory judgment action, it "'possess[es] discretion in determining whether and when to entertain [such] an action . . . .'" *Core-Mark Int'l Corp. v. Commonwealth Ins. Co.*, No. 05 Civ. 0183, 2006 WL 2501884, *9 (S.D.N.Y. Aug. 30, 2006) (quotation omitted); *see also Faxon*, 2007 WL 4554190, at *2 (citation and footnote omitted). To determine whether it should entertain a declaratory judgment action, the court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and

offer relief from uncertainty." *Core-Mark Int'l Corp.*, 2006 WL 2501884, at *9 (citations omitted).

In this case, Defendant contends that "[t]he Court lacks subject matter jurisdiction over the causes of action alleged in the plaintiff's complaint because there exists no actual, ripe or judiciable [sic] controversy between and/or among the parties to this action." *See* Defendant's Memorandum of Law at 9. Moreover, Defendant claims that Plaintiff is seeking an advisory opinion "which would have neither an immediate and practical effect on the conduct of the parties nor resolve the dispute alleged to exist between the parties, both of which are legal requirements for judicial intervention in the form of a declaratory judgment." *See id.* at 11. Defendant further explains that, as a condition precedent to recovery under the Policy, Plaintiff is required to replace his property, which he has not done and, indeed, may never do. Therefore, Defendant asserts that "there has been no breach, actual or alleged, of any contractual, common law, or statutory duty owed by [Defendant] to the plaintiff . . . [and what] [P]laintiff is seeking [is] relief for courses of action he might take in the future." *See id.* Finally, Defendant urges that, if the Court were to grant Plaintiff declaratory relief, "the floodgates would be open for him, and other insureds, to continually seek judicial guidance concerning whether various types of proposed replacement properties would qualify under the provisions of their insurance policies. Such abstract, hypothetical issues are not the proper subject of declaratory judgment actions." *See id.* at 12.

Plaintiff does not directly respond to this argument. Rather, Plaintiff asserts that, although

> the primary dispute between the parties involves the proper

> interpretation of the insuring agreement between the parties which, plaintiff agrees, should be resolved on this motion, there exist triable issues of fact with regard to whether defendant materially impaired and defeated plaintiff's ability to replace via the imposition of conditions not contained within the four corners of the insuring agreement, to wit: was plaintiff required to establish the replacement premises as HIS personal primary residence. . . .

*See* Affirmation of Michael Kurz dated December 26, 2006, at ¶ 2 (citation omitted). Finally, Plaintiff states that he "welcomes the Court, in searching the record[,] to reach a determination concerning the viability of [his] first cause of action based on its interpretation of the insuring agreement." *See id.* at n.1.

Plaintiff's claim for a declaratory judgment fails because, as in *Faxon*, what Plaintiff seeks here is an advisory opinion. In *Faxon*, the plaintiff law firm represented several clients who were allegedly injured by using Vioxx. A "steering committee" that included some of the firm's clients negotiated a proposed settlement agreement, one of the provisions of which required the law firm to either recommend the agreement to all of its clients or none of them. *See Faxon*, 2007 WL 4554190, at *1 (citation omitted). The law firm filed a complaint seeking a declaratory judgment about the ethical rules of the District of Connecticut; specifically, the law firm sought a ruling that these rules prevented it from making an all or nothing recommendation and that it had to treat each of its clients individually for purposes of determining whether or not to recommend the agreement. *See id.* (quotation and footnote omitted).

The court rejected the law firm's argument, noting that "justiciable disputes in insurance coverage cases derive from an event that occurred in the past, whereas this dispute would arise from an event that may (or may not) occur in the future." *Id.* at *2. The court explained further that

> this case would only become ripe for decision if and when [the law firm] recommends to some, but not all, of its clients to accept the settlement. Even then, the dispute would be hypothetical unless and until a potential adversary brought an action against [the law firm] related to its decision to recommend that only some of its clients accept the settlement.

*Id.*

The court, therefore, concluded that there was no case or controversy and dismissed the complaint for lack of jurisdiction. *See id.*

Similarly, in this case, Plaintiff is asking for an advisory opinion about a future event that may or may not occur. As the Court noted in conjunction with Plaintiff's breach-of-contract claim, Defendant has not breached its obligations under the Policy because it is not required to pay Plaintiff replacement costs until Plaintiff actually replaces the insured premises and incurs costs related to that replacement. Thus, this case would only be ripe for decision if and when Plaintiff purchased a replacement for the insured premises and incurred some costs in doing so. Moreover, this dispute would still be hypothetical unless and until Plaintiff filed a claim to recover those replacement costs and Defendant refused to pay that claim. Therefore, the Court concludes that there is no current controversy between these parties and dismisses the complaint for lack of jurisdiction.[5]

Alternatively, even if the Court had jurisdiction over Plaintiff's declaratory judgment

---

[5] Plaintiff attempts to circumvent the fact that Defendant has not breached its obligations under the Policy by arguing that issues of facts exist regarding whether Defendant materially impaired and defeated his ability to replace the insured premises. Even assuming that such factual issues exist, they are not ripe for review at this time. They would only become ripe for review if, after Plaintiff replaced the insured property, he filed a claim for the holdback amount, and Defendant refused to pay that claim. Unfortunately, since Plaintiff did not replace the insured premises within two years of the loss, as the Policy requires, it appears that he is contractually barred from bringing such a claim in the future.

claim, the Court would still have discretion to decide whether to entertain such a claim. In this case, a declaratory judgment would serve no useful purpose in clarifying or settling the legal issues in this case because the Court has already determined, in connection with Plaintiff's breach-of-contract claim, that, under the Policy, Defendant has no obligation to pay Plaintiff the sum of $55,024.02 (the holdback amount) because Plaintiff has not replaced the insured premises. Thus, "a declaratory judgment on the same issue would be superfluous." *See Core-Mark Int'l Corp.*, 2006 WL 2501884, at *9 (citations omitted). Furthermore, for the same reason, such a judgment would not finalize the controversy or offer relief from uncertainty. Therefore, even if it had jurisdiction over this claim, the Court would nevertheless exercise its discretion and decline to entertain this action

## IV. CONCLUSION

Accordingly, having carefully reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: February 26, 2008
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge